**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SANDRA PEARCE-MATO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:10-cv-1029** |
| **v** | ) |
| | ) |
| **ERIC K. SHINSEKI** | ) |
| *Secretary of the Department of Veterans' Affairs***,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is DEFENDANT'S MOTION FOR SUMMARY

JUDGMENT, filed at Doc. No. 27. In support of the motion, Defendant has also filed an

appendix (Doc. No. 28), concise statement of material facts (Doc. No. 29), and brief in support

(Doc. No. 30). Plaintiff responded with the filing of PLAINTIFF'S OPPOSITION TO

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 33), with brief in support

(Doc. No. 34), response to Defendant's concise statement of material facts (Doc. No. 35),

Plaintiff's own concise statement (Doc. No. 36), and appendix (Doc. No. 37). Defendant has

responded to Plaintiff's concise statement, and replied to Plaintiff's brief (Doc. No. 38). The

motion is now ripe for disposition.

Generally speaking, this is an employment discrimination action in which Plaintiff brings

a claim for constructive discharge against her former employer, Eric K. Shinseki, Secretary of

the Department of Veterans Affairs, under the Rehabilitation Act (the "Act"), 29 U.S.C. §§ 701,

*et seq*. Plaintiff seeks back pay, front pay or reinstatement, and other monetary compensation.

*See* Doc. No. 15, Amended Complaint.

The Department of Veterans Affairs (the "VA") has filed a motion for summary judgment, arguing primarily that Plaintiff cannot satisfy the *prima facie* case for discrimination because she was not "regarded as" disabled by her employer, and she was not qualified for the position she held at the time of her retirement. *See* Doc. No. 30. In the alternative, Defendant argues that, even if Plaintiff was able to establish a *prima facie* case, the VA has set forth a legitimate non-discriminatory reason for its actions that resulted in her decision to retire when she did. *Id.*

For the following reasons, the VA's motion for summary judgment will be denied.

**Factual Background**

Plaintiff Sandra Pearce-Mato was employed by the VA at the VA Medical Center in Butler, PA ("Butler VAMC") as a full time employee from January 5, 1975 until she was medically terminated on October 10, 1990, and again from March 8, 1992, until she retired effective May 1, 2009. During her former period of employment from 1975 to 1990, Plaintiff worked as a nurse. She sustained a work related injury on December 28, 1988 when a patient kicked her in her lower and upper back. Between October 10, 1990 and her return to work at the Butler VAMC in 1992, Plaintiff collected worker's compensation benefits.

Plaintiff returned to work at the Butler VAMC on March 8, 1992 as a Coding Clerk. Beginning on or about December 6, 2003, and continuing until on or about June 21, 2008, Plaintiff worked as a Medical Records Technician/Lead Scanner. Beginning on June 22, 2008, Plaintiff's position became Clinical Applications Coordinator ("CAC"), a position she held until her retirement in 2009. The record indicates, however, that, despite the position/title change, she continued to work as a Medical Records Technician/Lead Scanner until October 12, 2008. As a

CAC, Plaintiff's first line supervisor was Nevada "Sue" Legacy, and her second line supervisor was Douglas George. There were three (3) CACs at the Butler VAMC during the relevant time period: Plaintiff, Carol Niggel, and Janice Martin, with Carol Niggel as Team Leader (although she did not supervise Plaintiff).

According to Plaintiff, she "lost [her] voice" for the first time in approximately May 1984, and that her "[v]oice returned" on June 25, 1991. *See* Doc. No. 28-1, Plaintiff's Depo. at Tr. p. 30. This voice loss is apparently a result of mercury toxicity, a condition Plaintiff developed from having mercury fillings in her mouth for approximately fifteen cavities. During this period, Plaintiff described her voice as "hoarse and very low", and that this condition was consistent throughout the seven year period. *Id*. at Tr. pp. 32-33. Plaintiff undertook speech therapy, which she also called voice therapy, "for a long periods of time" during this period, to no apparent avail. *Id* at Tr. pp. 34-35. Beginning in the latter months of 1984, and continuing until she was medically terminated in December 1990, Plaintiff utilized an electrolarynx device while working, which is an electronic device that she would hold to the side of her neck that would vocalize sounds as she spoke. Plaintiff testified during her deposition that she began using the electrolarynx after a speech pathologist at the VA informed her about the device. She denied that she was required to ask any of her supervisors at the Butler VAMC if she could use to electrolarynx while working and she further testified that no supervisors ever objected to her use of the device. *Id*. at Tr. p. 39.

Following her return to work at the Butler VAMC, Plaintiff lost her voice intermittently between June 25, 1991, and October 15, 2008, testifying that, "Periodically throughout this whole time, I would lose my voice for a period of time, maybe a month, maybe less, but there was no problem." *Id.* at Tr. pp. 40-41. Plaintiff contends that she lost her voice for a second

extended period of time beginning on October 15, 2008, a loss which lasted until July 2009.

Plaintiff started training on a full-time basis for the CAC position on October 12, 2008. She was

trained by a retired Butler VAMC employee who had been asked to return to the facility in order

to train her. According to Plaintiff, the trainer came to work on October 14, 2008, "with a very

bad upper respiratory infection." *Id*. at Tr. pp. 48-49. That evening, Plaintiff began to develop

scratchiness and soreness in her throat, and she developed laryngitis the next day. She contacted

her physician, Roy Kerry, M.D., on or about October 16, 2008, and was prescribed antibiotics.

She contacted Dr. Kerry once again on October 24, 2008, and scheduled an appointment

to see him on November 4, 2008. After examining Plaintiff, Dr. Kerry noted the following

impression: "She has slight vocal cord edema from excessive use. We'll recommend that she

have light duty, meaning that she can do her nursing duties with reduction of the amount of

speech use required. Therefore, I would recommend that she be removed from the position of

teaching and return to other nursing care that does not require the continuous use of her voice for

a period of about 4 weeks." Doc. No. 28-9, Med. Records form Dr. Kerry dtd. Nov. 4, 2008. As

per that recommendation, Plaintiff was placed on light duty beginning on or about November 4,

2008, although that duty entailed continuing to work as a CAC undergoing computer training.

Also at some point in late October, 2008, Plaintiff approached Team Leader Carol Niggel

about using her electrolarynx. According to Plaintiff, she was told by Ms. Niggel that she "could

not use one of those mechanical things (electrolarynx), and that I had to use my own voice."

Doc. No. 28-1 at Tr. p. 43. At some point thereafter, Plaintiff asked her first line supervisor Sue

Legacy about using an electrolarynx, also informing Legacy of Niggel's response. According to

Plaintiff, in response Ms. Legacy "just smiled and said 'oh well'". *Id*. Plaintiff interpreted this

reaction from Legacy as an adoption of Niggel's position that the use of the electrolarnyx was

not permitted. Plaintiff submitted an Application for Promotion or Reassignment for the position of Supervisory Medical Records Technician, also known as Lead Coder, on December 8, 2008. Ultimately, Plaintiff was not selected for this position.

At the request of her employer, Plaintiff underwent a Fitness for Duty examination with Donald McGraw, M.D., on December 9, 2008. Dr. McGraw referred Plaintiff to Joseph Turner, M.D., an ear, nose, and throat specialist. Plaintiff was also away from work at the Butler VAMC on sick leave from December 17, 2008 until March 13, 2009 for surgery on her hand and wrist. The surgery resulted from an injury sustained on December 16, 2008, when Plaintiff slipped and fell on ice. On January 6, 2009, Plaintiff was examined by Dr. Turner for a second Fitness for Duty examination, who then referred her to Priya Krishna, M.D., at the University of Pittsburgh Voice Center. Dr. Krishna conducted a Fitness for Duty examination, Plaintiff's third such exam, on February 6, 2009. Dr. Krishna recommended that Plaintiff undergo voice therapy, and that she follow-up for a re-evaluation following completion of the therapy. Ultimately, Plaintiff did not undergo voice therapy because, according to her, she could not afford to pay for it, and her employer would not cover the expense.

Plaintiff returned to work during the week of March 13, 2009, and was placed on light duty assignment in the Business Office beginning on March 16, 2009. During this assignment, Plaintiff was no longer training for the CAC position; instead, she was doing general administrative work. At some point following the February 6, 2009, Fitness for Duty examination, Plaintiff met with Michelle Dominski, Butler VAMC Human Resources Officer, for the first time. It was during that meeting that Plaintiff contends she was informed that Defendant would not pay for voice therapy because it was not a work-related injury. Doc. No.

28-1 at Tr. pp. 66-67. Not inconsistent with Plaintiff's recall, Dominski described what occurred

during that first meeting in slightly greater detail:

> During the meeting, [Plaintiff] indicated that she was not able to speak and was
> unsure as to if and/or when the situation would be resolved. We discussed the
> fact that she had undergone a fitness for duty, a referral to an ENT, and then a
> final referral to the Voice Center. We discussed the fact that the Voice Center
> recommended that she undergo voice therapy, as well as, follow up at the
> completion of voice therapy for re-evaluation. She stated that she was unwilling
> to undergo voice therapy as she had the same issue years ago and voice therapy
> didn't help her problem. She stated that she had a follow up appointment
> scheduled with the Voice Center on April 6, 2009. At that time, she asked
> whether she was going to be fired. I explained that was a course of action that we
> could take, i.e., separation due to medical inability to perform the duties of her
> position and that in lieu of being separated she might want to think about
> disability retirement. Complainant indicated that she was eligible to retire and
> had already received an estimate from the HRMS Assistant who handles
> retirements. [Plaintiff] asked whether she would be terminated immediately or
> [if she] could go to her follow up appointment with the Voice Center on April 6,
> 2009. I told her [Plaintiff] that she would not be terminated immediately; we
> would reassess the situation after she underwent her follow up appointment with
> the Voice Center.

Doc. No. 28-8, Dominski ORM Affidavit, pp. 2-3.

Plaintiff was examined in the follow up appointment by Dr. Krishna on April 6, 2009.

Dr. Krishna was unable to determine Plaintiff's fitness to return to work given the fact that she

had not participated in voice therapy. On April 7, 2009, Plaintiff met with Sue Legacy and Lori

Young, a Human Resources Specialist, and was told, once again, that Butler VAMC would not

pay for speech therapy, but that Young would discuss the possibility that therapy could take

place at Butler VMAC. Plaintiff met with Ms. Dominski on April 13, 2009, and was told that

she would be medically terminated as of April 17, 2009. Plaintiff submitted her Application for

Immediate Retirement on that day, with May 1, 2009, as her date of final separation.

Plaintiff testified that she had requested a meeting with the Director, Ms. Nealon, but that

she was first required to meet with Mr. Cotter, and that he wanted the meeting to include Ms.

Dominski and Mr. George. Plaintiff requested the meeting even though she had already submitted her retirement paperwork. Doc. No. 28-1, Plaintiff's Deposition, pp. 74, 76, 111. Plaintiff's meeting with Messrs. Cotter and George and Ms. Dominski allegedly took place on April 16, 2009. Plaintiff testified that, at that meeting, she "asked three main questions, and the one question was because the doctor did not determine whether I was fit for duty or not, what doctor made that determination, and Michele [Dominski] said, 'No doctor made that determination, I made that determination.'" According to Plaintiff, Ms. Dominski explained that she made the determination because Plaintiff refused to attend voice therapy unless the VA paid for it, or Plaintiff was permitted to have it at the Butler VAMC. *Id.* at pp. 74-75.

## Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir.2007). The burden is initially on the moving party to demonstrate that the record evidence does not create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir.2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v.*

*Stroup*, 413 F.3d 359, 363 (3d Cir.2005).  When the nonmoving party bears the burden of proof at trial, the moving party may meet its burden by showing that the admissible record evidence would be insufficient to carry the nonmoving party's burden of proof.  *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial.  *Id.* at 324, 106 S.Ct. 2548.  The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations set forth in pleadings.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989).

## Analysis

Generally speaking, Plaintiff argues that she was constructively discharged due to her disability.  Defendant, on the other hand, asserts that Plaintiff was not terminated, and that she voluntarily chose to retire effective May 1, 2009.  Defendant presents a somewhat layered argument that: 1) Plaintiff has not properly brought a claim premised upon an actual disability under the Rehabilitation Act; 2) that Plaintiff cannot establish a *prima facie case* of discrimination resulting from having been perceived to be disabled; and, 3) that, even assuming that Plaintiff did successfully establish a *prima facie* case, the VA has established a legitimate and non-discriminatory reason for its actions, and that Plaintiff has failed to adduce any evidence that such reasoning was pretext for discriminatory animus.  *See generally* Doc. No. 30.

"The Rehabilitation Act prohibits discrimination based on disability by Government agencies."  *Kondas v. Potter*, 328 F. App'x 116, 119 - 120 (3d Cir.2008)(citing 29 U.S.C. §

794(a)).[1]  In *McDonald v. Com. of Pa., Dep't of Public Welfare, Polk Center*, 62 F.3d 92 (3d Cir.1995), the Court of Appeals for the Third Circuit acknowledged that "[w]hether a suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining liability are the same." *Id.* at 95 (citing *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir.1995)).  As such, courts analyze a plaintiff's discrimination claims according to the familiar burden shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir.2000) ("parties' burdens in establishing and defending claims" for discrimination are determined by procedure set forth in *McDonnell Douglas Corp. v. Green*).  "Under this approach, the plaintiff must first establish a *prima facie* case.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge.  If the defendant does so, the presumption of intentional discrimination disappears, but the plaintiff can still prevail by showing that the employer's proffered reason is merely a pretext for discrimination." *James v. Sutliff Saturn, Inc.*, 10–4742, slip op., at *4 (3d Cir. Mar. 15, 2012).  On summary judgment, Plaintiff may meet her burden by "providing evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." *See id.* at 4–5 (citing *Sarullo v. United States Postal Service*, 352 F.3d 789, 799–800 (3d Cir.2003) (citations and internal quotations omitted)).

---

[1]      The Rehabilitation Act provides in pertinent part: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).

To establish a *prima facie* case of discrimination under the ADA, "a plaintiff must show (1) that [she] is disabled within the meaning of the ADA, (2) that [she] is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [she] was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir.2010) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999)).  The Rehabilitation Act defines an "individual with a disability" as someone "who (1) has a physical or mental impairment that substantially limits his/her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Kania v. Potter*, 358 Fed. Appx. 338, 342 (3d Cir.2009) (citing 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)).  A "substantial limitation" is a "significant restriction on a major life activity 'as compared to ... the average person in the general population.'" *Id.* (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195–96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)) (internal citation omitted).  A major life activity is one that is "of central importance to daily life," *Williams*, 524 U.S. at 197, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working,"  29 C.F.R. § 1630.2(i).

The ADA Amendments Act of 2008 ("ADAAA"), Pub.L. 110–325, 122 Stat. 3553 (2008), effective on January 1, 2009, applies to this case because Plaintiff retired on May 1, 2009.  The amendments broadened the scope of the ADA by expanding the definition of disability, which had been narrowed by Supreme Court interpretation.  *See id.* (finding that Supreme Court precedent, such as *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and regulations promulgated by the Equal Employment Opportunity Commission had narrowed the definition of disability in a manner inconsistent with congressional intent).  With the passage of the ADAAA, Congress expanded the statute's non-

exhaustive list of "major life activities" and declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub.L. No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555. Major life activities include "performing manual tasks, seeing, hearing, eating, sleeping, ... lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added).

Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 U.S. Dist. LEXIS 24039, at *17, 2012 WL 604169 (W.D.Pa. Feb. 24, 2012). The EEOC has noted that under the ADAAA, "substantially limits" is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i) and (iii). "Rather, 'the determination of whether an impairment substantially limits a major life activity requires an individualized assessment,' and should 'require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA.'" *Cohen v. CHLN, Inc.*, No. 10–514, 2011 U.S. Dist. LEXIS 75404, at *20, 2011 WL 2713737 (E.D.Pa. July 13, 2011). Ultimately, whether an individual is substantially limited as to a major life activity is a question of fact. *Williams*, 380 F.3d at 763.

A. "Actual Disability" v "Regarded as Disabled"

At the outset, the Court must address Defendant's argument as to the precise nature of Plaintiff's claim. More specifically, Defendant moves for summary judgment against Plaintiff to the extent that Plaintiff attempts to advance a claim that she suffered discrimination based upon an "actual" disability, as opposed to simply being "regarded as" disabled. This distinction is important because as part of the amendments to the ADA, claims based on a failure to accommodate can only be brought as part of an actual disability claim. The ADAAA

specifically provides that an employer is not required to accommodate employees who are merely regarded as disabled. 42 U.S.C. § 12201(h). Plaintiff responds that her claim for discrimination based upon an actual disability is properly before the Court, and that summary judgment should not be entered in that respect. After consideration of the filings of record, the Court agrees with Plaintiff.

Defendant challenges Plaintiff's "actual disability" claim on two procedural bases, beginning with the question of whether Plaintiff has satisfied a jurisdictional prerequisite to pursue such a claim. The Court notes that Defendant does not dispute the physical limitations alleged by Plaintiff, or that she suffered from vocal cord edema brought about by mercury toxicity. Likewise, Defendant does not dispute that the vocal cord edema began in October 2008 and continued to June 2009, or that speaking is a major life activity. As such, Defendant's effort to draw a distinction regarding whether Plaintiff is proceeding under a theory of actual disability, as opposed to being regarded as disabled, is not an effort to factually challenge Plaintiff's condition, but to legally frame Plaintiff's claim in such a way that the government can seek to have summary judgment awarded in its favor. Plaintiff contends that she has pursued a claim of disability discrimination from the outset, both before the EEOC as well as in this civil action.

1.     Exhaustion of Administrative Remedies

A federal employee seeking relief under the Rehabilitation Act must exhaust administrative remedies through the Equal Employment Opportunity Commission ("EEOC") prior to filing suit. *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000). A claimant must first attempt to informally resolve the discrimination charge by consulting with an Equal Employment Opportunity ("EEO") counselor within forty-five (45) days of the alleged discriminatory conduct. *Dalzell v. Astrue*, No. 05-755, 2008 WL 598307, at * 3 (W.D.Pa. Mar.

3, 2008) (Cercone, J.); 29 C.F.R. § 1614.105(a)(1). If the matter cannot be resolved informally, a complaint must be filed with the agency within fifteen (15) days of receiving notice that the EEO counselor cannot resolve the matter. 29 C.F.R. § 1614.106. The EEOC then investigates the discrimination claim and issues a final agency decision. 29 C.F.R. §§ 1614.108, 1614.109, 1614.109 and 1614.110. Thereafter, the employee may either appeal to the EEOC, 29 C.F.R. § 1614.401, or file a civil action in federal court within ninety (90) days of receiving the final agency decision. 29 C.F.R. § 1614.407. As a prerequisite to filing suit in federal court, a plaintiff must receive a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f) (l); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir.2001) (in Title VII context).

"Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F2d 394, 398-99 (3d Cir. 1976)(quoting *Gamble v. Birmingham Southern R.R. Co.*, 514 F.2d 678 (5th Cir. 1975); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)). This civil action arose from Plaintiff's administrative claim filed June 10, 2009, with the VA's Office of Resolution Management ("ORM") in case No. 200H-0259-2009102947. Doc. No. 28-5, ORM Complaint. Plaintiff's ORM Complaint of Employment Discrimination alleged the following basis for her claims of discrimination, "*Perceived Disability Regarded As*/ & Age – 56." *Id*. at § 7 (emphasis added). Plaintiff's alleged the following description of her claims, "On May 1, 2009, I was forced to retire due to employer *regarding me as* disabled & due to my age 56." *Id*. at § 8 (emphasis added). The ORM accepted the following claim: in case number 200H-0529-2009102947, "Whether on the basis of age (over 40) and disability (perceived), you were

13

discriminated against with respect to constructive retirement when: On May 1, 2009, you felt

compelled to retire from your Registered Nurse, VN-2 position." Doc. No. 28-6, Plaintiff's

ORM Affidavit. The ORM Affidavit contained the following questions that were completed by

Plaintiff with handwritten responses directly on the form:

> 4.      Do you claim to have a disability? `No` If so, please state the medical term for your medical condition or explain the nature of your condition and answer the following:
>
> 5.      Is your medical condition permanent or temporary? If temporary, what is the duration of your condition? `Temporary – Oct 16, 2008 – June 1, 2009`
>
> 6.      Does your medical condition substantially impair any of the following major life activities (i.e., caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working)? If so, what and how does it affect you at home and work? `During period # 5above [performing manual tasks, speaking, breathing, and working] were a problem`
>
> 7.      Was management aware of your impairment? `Yes` If so, how and when were they made aware? Please be specific. `Oct 2008/ Nevada Legacy – you could hear it just from hearing me try to speak.`
>
> 8.      Explain why you believe you were regarded as having a disability. `Because mgmt did not want to help only get rid of me.`
>
> 9.      Did you provide management documentation of your medical condition? `Yes`
>
> 10.     What accommodation, if any, did you require to do your job? `Time off` Please attach documentation. `3 Drs`
>
> 11.     Did you request accommodations for your condition with management? `Yes` If so, please explain to whom you made the request, when it was requested, how it was requested, and what was requested. `Michele Dominski HR`
>
> 12.     What was Management's response/action pertaining to your request? `No help` Who responded and when did they respond to your request? `Michelle Dominski, Nevada Legacy, Doug George, Lori Young`

13.    Were you offered an accommodation?  No  If so, explain who made the offer and the nature of the offered accommodation.

*Id.*  Defendant highlights Plaintiff's own language for the proposition that a claim of discrimination based upon an actual disability was not included in her agency complaint of discrimination.  *See* Doc. No. 30 at 6 – 7.  In sum, Defendant's position in this regard is that "never during the administrative case did plaintiff assert – at any point – that she was discriminated against based on an actual disability under 42 U.S.C. § 12102(1)(A)."  *Id.*

In response, Plaintiff notes that notwithstanding that particular instances in which she invoked language of being perceived to be (or regarded as) disabled, a claim of discrimination based upon an actual disability was within the scope of the EEO's investigation.  *See* Doc. No. 34.  To that end, Plaintiff notes that the ORM affidavit specifically referenced her condition as purportedly limiting her in major life activities, specifically activities such as "performing manual tasks", "speaking", "breathing", and "working" (*see* Doc. No. 28-6 at ¶ 6), and that, at the conclusion of its investigation, ORM ultimately found that Plaintiff's vocal cord edema substantially limited her in the major life activity of speaking such that Plaintiff had a disability within the meaning of the Rehabilitation Act (Doc. No. 37-7, ORM Final Agency Decision).  In addition, Plaintiff's claim of an actual disability was specifically included throughout the agency's analysis of her claims.  *Id.*  For Defendant to now argue that Plaintiff's claim of having an actual disability was not included within the scope of the EEO investigation essentially based upon selective identification of handwritten responses on two different forms, responses that are tempered by other responses in those same documents, myopically overlooks both the entire record as well as the legal standard for such a determination.  Defendant's motion for summary

judgment on Plaintiff's Rehabilitation Act claim for "actual disability" based on her purported failure to exhaust administrative remedies, will be denied.

      2.      Claim of Actual Disability in the Amended Complaint

The Court turns to the language in the Amended Complaint in order to consider Defendant's argument that Plaintiff abandoned her claim for actual disability discrimination. Plaintiff contends that the following allegations of the Amended Complaint are consistent only with a claim of actual disability:

> 9.      At all times relevant hereto, Plaintiff has suffered from Vocal Cord Edema, a condition which renders speaking difficult and painful when it is active, as well as fibromyalgia and neck and back diseases. When the condition(s) becomes active, it varies in severity and duration.
>
> 10.     When the condition(s) is active, Plaintiff is substantially limited in the major life activity of speaking and/or working, and/or walking/sleeping, and thus has a disability within the meaning of the Rehabilitation Act.
>
> 11.     Beginning in October 2008, Plaintiff experienced her most recent active period of Vocal Cord Edema. There were also flareups of the other illnesses.
>
> 12.     Because the Clinical Application Coordinator involves training new employees, it requires a great deal of speaking.
>
> 13.     Accordingly, Plaintiff contacted both her immediate supervisor and Human Resources to request a transfer to a position which would not require a great deal of speaking for the duration of the period that her condition was active. Plaintiff supported this request with medical documentation that clearly supported this request with medical documentation that clearly stated the nature of her condition, its unknown duration, and that speaking would cause Plaintiff pain.

Doc. No. 15, Am. Compl. Plaintiff contends that such averments are consistent only with a claim of actual disability.

Once again, the Court agrees with Plaintiff that a claim of actual disability is properly before it, and that Plaintiff will not be limited to pursuing a claim of being simply "regarded as" disabled. Defendant's attempt to distinguish between being regard as disabled and actually being

disabled is misplaced.  The definitions are not mutually exclusive.  "An individual is disabled if he has 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual.'"  *Sulima*, 602 F.3d at 185 (quoting 42 U.S.C. § 12102(2)).  Additionally, people who have a record of such impairments or are regarded as having such impairments also fit the definition of being "disabled."  42 U.S.C. § 12102(1)(B) and (C).  While the "regarded as" aspect of the definition expands the range of persons covered under the statute, it does not require an either/or determination.  In fact, such an analysis would invert the priorities of the statute itself, something that the ADAAA sought to correct.  The primary object of attention of the ADA and, by extension the Rehabilitation Act, is whether the employer has complied with its obligations not to discriminate, as opposed to the disability determination itself.  *See* 29 C.F.R. Pt. 1630, App., Interpretive Guidance on Title I of the Americans with Disabilities Act; *see also*, *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987)(adopting a broad view of the definition of handicap under the Rehabilitation Act).  In this case, the Court is satisfied that Plaintiff has met her exhaustion of administrative remedies requirement, and that Defendant has had sufficient notice of the claims being asserted against it since the outset of the case.

B.      *Prima facie* case

Defendant also contends that Plaintiff has failed to establish a *prima facie* case of discrimination under the Rehabilitation Act in that she has failed to establish that she was disabled, and that she was otherwise qualified for the position.  As noted above, a plaintiff must allege that she has a physical or mental impairment.  A "physical impairment" is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs;

respiratory, including speech organs; cardiovascular; reproductive, digestive, genitourinary; hemic and lymphatic, skin; and endocrine." 29 C.F.R. § 1630.2(h)(1).

Simply having an impairment is insufficient to render one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity. *Chevron Phillips*, 570 F.3d at 614, citing *Toyota Motor*, 534 U.S. 184, 195, 122 S.Ct. 681 (2002). The implementing regulations in § 1630.2(i) provides a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and walking." 29 C.F.R. § 1630.2(i); *id.* Moreover, "to be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform or to be significantly restricted in the ability to perform it." *Id.*, citing 29 C.F.R. § 1630.2(j). In deciding whether a person is "substantially limited in a major life activity, the Equal Employment Opportunity Commission ("EEOC") advised that courts should consider: '(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" *Id.* at 614–15, citing 29 C.F.R. § 1630.2(j). "[W]hether an individual is disabled under the ADA ... remains an individualized inquiry." *Id.* at 620.

The fact that the periods during which an episodic impairment is active and substantially limits a major life activity may be brief or occur infrequently is no longer relevant to determining whether the impairment substantially limits a major life activity. 29 C.F.R. § 1630.2(j)(1)(vii) states: "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." The legislative history of the ADAAA provides: "This … rule of construction thus rejects the reasoning of the courts in cases like *Todd v. Academy*

*Corp.* [57 F.Supp.2d 448, 453 (S.D. Tex. 1999)] where the court found that the plaintiff's epilepsy, which resulted in short seizures during which the plaintiff was unable to speak and experienced tremors, was not sufficiently limiting, at least in part because those seizures occurred episodically.  It similarly rejects the results reached in cases [such as *Pimental v. Dartmouth-Hichock Clinic*, 236 F.Supp.2d 177, 182-83 (D. NH 2002)] where the courts have discounted the impact of the impairment [such as cancer] that may be in remission as too short-lived to be substantially limiting.  It is thus expected that individuals with impairments that are episodic or in remission (e.g., epilepsy, multiple sclerosis, cancer) will be able to establish coverage if, when active, the impairment or the manner in which it manifests (e.g., seizures) substantially limits a major life activity."  2008 House Judiciary Committee Report at 19-20.

Here, the Court has no difficulty determining that Plaintiff's evidence as to whether she was disabled is adequate to present a genuine issue for trial.  The record includes evidence of a medical condition affecting her ability to speak sufficient to withstand summary judgment as to the first prong of her *prima facie* case.

Defendant also argues that Plaintiff has failed to show that she is qualified to perform the essential functions of the position.  For the purpose of establishing the second prong of the *prima facie* case, the ADA defines "qualified individual" as one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Reasonable accommodations are defined by the ADA regulations as:

> Modifications or adjustments to the work environment, or to the manner or
> circumstances under which the position held or desired is customarily performed,
> that enable an individual with a disability who is qualified to perform the essential
> functions of that position[.]

29 C.F.R. § 1630.2(o)(1)(ii). Such modifications may include "appropriate adjustment or modifications of examinations, training materials, or policies ... and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(o)(2)(ii). The ADA's regulations state that: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). Similarly, the EEOC's interpretive guidelines provide that: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

As to the VA's actions under this requirement, Defendant argues that Plaintiff never requested an accommodation in writing, and therefore, it was under no obligation to engage in the interactive process. As Plaintiff correctly points out in response, "requests for reasonable accommodation do not need to be in writing … [T]o request accommodation, an individual may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'" Doc. No. 34 at 16 (quoting *Taylor v. Phoenixville School District*, 174 F.3d 142, 158 (3d Cir. 1999)). The notice merely "must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodation for that disability." *Id.* (quoting *Taylor*, 174 F.3d at 158-59).

The Court finds that there are genuine issues of material fact regarding the essential functions of the position at issue and whether plaintiff can perform them with reasonable accommodation(s). Notwithstanding the fact that Plaintiff's position required what may amount to a significant amount of speaking, the evidentiary record includes Plaintiff's request to use her electrolarynx. Defendant's response thereto presents a genuine issue of material fact over whether Plaintiff has established a *prima facie* showing of discrimination.

C.    Legitimate, Non-Discriminatory Reason and Pretext

Defendant contends that it has presented a legitimate, non-discriminatory reason for its actions, and that Plaintiff has adduced no evidence to show that such a reason was pretext for actual discrimination. Defendant's argument is relatively straightforward, and rests upon Plaintiff's refusal to undergo voice therapy as follows:

> Even assuming that plaintiff was constructively discharged from the Butler VAMC – which defendant adamantly denies – the VA took the actions it did because plaintiff refused to undergo voice therapy. Because plaintiff refused the recommended treatment for her voice loss, no determination could be made whether she was fit to perform her duties as a CAC. (Letter from Dr. Krishna dated April 6, 2009 (Ex. 11)(stating that plaintiff "is unchanged because she was unable to start [voice] therapy, and until that is begun, I can make no determination about her fitness to return to work."); (Dominski ORM Affidavit, p. 3 (Ex. 8)(explaining that plaintiff was told that the VA would reassess the situation after her follow-up appointment on April 6, 2009)). As previously discussed, plaintiff did not perform the duties of a CAC at any time from when she assumed the position until her retirement effective May 1, 2009. As such, the VA has articulated a legitimate, non-discriminatory reason for its actions.

Doc. No. 30 at 16.

Plaintiff, on the other hand, points to evidence in the record that she requested to use her electrolarynx, and that the request was refused without justification. She was then ordered to undergo a fitness for duty examination. Plaintiff notes that:

Although Plaintiff informed the doctors conducting that exam of her successful past use of the electrolarynx, this was taken into account. Instead the doctors seemed to equate fitness for duty with the complete recovery of Plaintiff's voice. The doctors also ordered treatment that had been ineffective in the past despite being conducted over a far longer period than that contemplated by the recommending doctor. The VA refused to pay or make any other provision to assist Plaintiff in receiving the treatment that had proven to be ineffective. When Plaintiff returned from sick leave, she was removed from the CAC position without being given the opportunity to try to perform the essential functions of that position. She was subsequently informed that she would be medically terminated due to her "refusal" to undergo treatment that she had every reason to believe wouldn't help. To protect her pension, Plaintiff offered to retire instead, an offer that the Defendant accepted.

Doc. No. 34 at 22.

The United States Court of Appeals for the Third Circuit has explained the analysis of a motion for summary judgment with regard to an employment discrimination claim at this stage of a proceeding:

To defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, a plaintiff who has made a *prima facie* showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is not worthy of credence … A plaintiff is not required to produce evidence which necessarily leads to the conclusion that the employer did not act for nondiscriminatory reasons.

*Semper v. Johnson & Higgins*, 45 F.3d 724. 728 (3d Cir. 1995), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2611 (1995).

"[A]n employer commits unlawful discrimination under the ADA if the employer does not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability [.]" *Taylor*, 184 F.3d at 311. As for the process by which the need for an accommodation is raised and addressed, the Third Circuit has held, based on ADA regulations and interpretive guidelines that both the employer and employee "have a duty to assist in the search for appropriate reasonable accommodation and to act in good

22

faith." *Taylor*, 184 F.3d at 312 (quoting *Mengine v. Runyon*, 114 F.3d 415, 419–20 (3d Cir.1997)). A court must determine "whether the employee ... provide[d] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.* Defendant's denial of Plaintiff's request for use of her electrolarynx without any interactive discussion regarding accommodation, followed by Plaintiff's subsequent retirement after being presented with the option of either seeking a disability retirement or having her employment terminated, could easily support a reasonable inference that the cause of Plaintiff's retirement was discrimination.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be denied. An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SANDRA PEARCE-MATO,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:10-cv-1029** |
| **v** | ) |
| | ) |
| **ERIC K. SHINSEKI** | ) |
| *Secretary of the Department of Veterans' Affairs*, | ) |
| | ) |
| **Defendant.** | ) |

## ORDER OF COURT

**AND NOW**, this 11th day of June, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Doc. No. 27, is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff and Defendant shall file their respective Pretrial Narrative Statements on or before July 2, 2012. Supplemental Pretrial Narrative Statements may thereafter be filed on or before July 12, 2012.

The Court shall conduct a pretrial conference on **Thursday, July 19, 2012, at 9:30 a.m.** in Courtroom 6(c), United States Courthouse, 700 Grant Street, Pittsburgh, PA 15219. The parties, or a person with authorized authority, are directed to attend either in person or be available by phone.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     Neal A. Sanders, Esquire
       Email: lonas@earthlink.net
       Dirk D. Beuth, Esquire
       Email: dbeuth@windstream.net

       AUSA Megan E. Farrell, Esquire
       Email: megan.farrell@usdoj.gov